# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2020 ND 70

| | |
|---|---|
| Crystal Beth Martodam, | Plaintiff and Appellee |
| v. | |
| Jason James Martodam, | Defendant and Appellant |
| and | |
| State of North Dakota, | Statutory Real Party in Interest |

No. 20180432

Appeal from the District Court of Benson County, Northeast Judicial District, the Honorable Lonnie Olson, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Kyle R. Craig, Minot, N.D., for plaintiff and appellee.

Jason J. Martodam, self-represented, Leeds, N.D., defendant and appellant.

**Tufte, Justice.**

[¶1]   Jason Martodam appeals an amended divorce judgment and an order denying his motions for contempt and to amend the amended judgment.  We conclude the district court did not err in entering the interim order, denying his ex parte motion, and denying his motions for sanctions.  We conclude the court did not err in awarding primary residential responsibility to Crystal Martodam and did not abuse its discretion in not holding her in contempt and in excluding exhibits that he had offered.  We further conclude the court did not err in failing to order a parenting investigator and in calculating child support.  We conclude, however, the court erred in allowing the minor children to decide whether to have parenting time.  We affirm the amended judgment as modified and affirm the subsequent order denying the motions.

I

[¶2]   In 2015, Jason Martodam and Crystal Martodam were divorced after the parties stipulated to terms in a marital termination agreement.  The parties agreed to equal residential responsibility for their four minor children.  In April 2018, Crystal Martodam moved the district court to modify the divorce judgment to award her primary residential responsibility, to issue an interim order, and to change the venue.

[¶3]   In May 2018, after venue was changed, the district court also denied a pending ex parte motion seeking temporary primary residential responsibility filed by Jason Martodam.  After a hearing the court entered an interim order awarding Crystal Martodam primary residential responsibility of the children and setting a child support amount.  In June 2018, Jason Martodam moved for a default judgment, claiming no response had been filed to his ex parte motion, which the court denied.

[¶4]   After an August 2018 evidentiary hearing, the district court entered findings of fact, conclusions of law, and an order to amend the judgment, awarding primary residential responsibility to Crystal Martodam.  In December 2018, Jason Martodam filed a notice of appeal.

[¶5]   In January 2019, while the appeal was pending, Jason Martodam filed motions for contempt and to amend the amended judgment.  The case was remanded.  After a March 2019 hearing, the court denied his motions. In April 2019, Jason Martodam filed a second notice of appeal.

II

[¶6]   Although Jason Martodam raises approximately 19 issues on appeal, we will address the dispositive issues.

[¶7]   Jason Martodam raises several issues related to the amended interim order signed in June 2018.  Under N.D.R.App.P. 35(a)(2), "[u]pon an appeal from a judgment, the court may review any intermediate order or ruling which involves the merits and affects the judgment appearing upon the record."  As such, "[g]enerally, interlocutory orders in an action are merged into the final judgment and may be reviewed on appeal of that judgment." *Rhodenbaugh v. Rhodenbaugh*, 2019 ND 109, ¶ 6, 925 N.W.2d 742 (quoting *Tibbetts v. Dornheim*, 2004 ND 129, ¶ 11, 681 N.W.2d 798).  This Court has also said that a final judgment "supersedes the interim order's parenting provisions, which are by nature temporary." *Rhodenbaugh*, at ¶ 11.

[¶8]   Jason Martodam argues that the district court erred in granting Crystal Martodam interim residential responsibility, that his ex parte motion should have been heard at the May 2018 hearing rather than her interim motion, that the court erred in immediately denying his ex parte motion, that the court erred in not enforcing the rules of court by failing to require certain evidence from Crystal Martodam, and that the court erred in not serving and filing the interim order in a timely manner.

[¶9]   Crystal Martodam argues that the interim order, although a temporary determination of primary residential responsibility, has no permanent bearing on the outcome of the trial.  She asserts this issue was addressed at the trial during which evidence was presented and this aspect of the appeal should be dismissed. She also asserts the court did not err in denying Jason Martodam's ex parte motion under N.D.R.Ct. 8.2(a) because no exceptional circumstances existed, and the court did not abuse its discretion in denying sanctions for late

2

discovery responses because it did not change the court's final decision nor did Jason Martodam request a continuance.

[¶10] While Jason Martodam was given notice of the June 2018 interim order sometime later, he also appears to concede he was aware of and followed its provisions. Here, the district court denied his motion for ex parte interim relief because it found no exceptional circumstances existed to justify the requested relief. We conclude he failed to establish he was prejudiced by any alleged errors leading to the entry of the interim order. Nevertheless, Jason Martodam's main contentions on appeal relate to the district court's decision in awarding primary residential responsibility.

III

[¶11] Jason Martodam argues the district court erred in granting primary residential responsibility to Crystal Martodam.

[¶12] Section 14-09-06.6, N.D.C.C., governs post-judgment modification of residential responsibility. *See Dickson v. Dickson*, 2018 ND 130, ¶ 7, 912 N.W.2d 321 (statute governs motions to modify a judgment when the parties had stipulated to joint residential responsibilities). Under N.D.C.C. § 14-09-06.6(6), after two years, the district court may modify residential responsibility when: 1) there is a material change in circumstances of the child or the parties, and 2) modification is necessary to serve the child's best interests.

[¶13] "When the parents have joint residential responsibility, an original determination to award 'primary residential responsibility' is necessary." *Dickson*, 2018 ND 130, ¶ 14, 912 N.W.2d 321 (citing *Maynard v. McNett*, 2006 ND 36, ¶ 21, 710 N.W.2d 369). "The district court must consider all relevant evidence, including pre-divorce conduct and activities, when determining residential responsibility in the best interests of the children if the previous residential responsibility award was based on the stipulation of the parties and not determined by the court-based consideration of the evidence." *Dickson*, at ¶ 14. A court must award primary residential responsibility in light of the child's best interests, considering all the relevant best-interest factors under N.D.C.C. § 14-09-06.2(1).

[¶14] We exercise only a limited review of primary residential responsibility decisions. *Zuo v. Wang*, 2019 ND 211, ¶ 11, 932 N.W.2d 360; *Grasser v. Grasser*, 2018 ND 85, ¶ 17, 909 N.W.2d 99. The district court's decisions to modify residential responsibility and to modify parenting time present findings of fact, which will not be reversed on appeal unless clearly erroneous. *Valeu v. Strube*, 2018 ND 30, ¶ 8, 905 N.W.2d 728; *Green v. Swiers*, 2018 ND 258, ¶ 14, 920 N.W.2d 471. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, we possess a definite and firm conviction that a mistake has been made. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113.

[¶15] The district court also has wide discretion in evidentiary matters, and this Court will not overturn a decision to admit or exclude evidence unless the district court abused its discretion. *Zuo*, 2019 ND 211, ¶ 7, 932 N.W.2d 360; *Vandal v. Leno*, 2014 ND 45, ¶ 26, 843 N.W.2d 313. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. The appellant bears the burden of proving error." *Vandal*, at ¶ 26 (quoting *State v. Gipp*, 2013 ND 134, ¶ 5, 833 N.W.2d 541).

[¶16] Jason Martodam contends the district court erred in granting primary residential responsibility. He also raises several evidentiary issues relating to the credibility and weight given to the evidence at trial. He argues that Crystal Martodam did not submit her own exhibits but attempted to rely on "his" exhibits and evidence, that the court erred in relying on alleged conflicting testimony of the children and failed to examine his exhibits, and that the court erred in considering his interaction with the children during his cross-examination of them. He further asserts the court erred in not considering certain children's testimony which conflicted with prior affidavits and in not wanting to separate the children.

[¶17] Jason Martodam further argues the district court erred by not encouraging an ongoing relationship between him and the four children. He contends the court erred in allowing the oldest children the choice of whether to have parenting time and the court abused its discretion by not ordering some type of parental investigator and counseling for the children.

4

[¶18] Crystal Martodam responds that evidence showed the 50-50 shared parenting arrangement was not feasible and the oldest child expressed a mature preference for residing with his mother, supporting a material change in circumstances. She further asserts the court properly considered the best-interest factors, finding that none of the factors favored Jason Martodam while some factors favored Crystal Martodam.

[¶19] In August 2018, the district court held an evidentiary hearing on the parties' competing motions to modify primary residential responsibility. After trial, the court issued extensive findings of fact, conclusions of law, and an order to amend the judgment. In its findings, the court specifically discussed the testimony received at trial from Crystal Martodam; Jason's father, James Martodam; Jason Martodam; and the parties' two oldest children. The court found the children had a deeper emotional bond with Crystal Martodam, Jason Martodam was overly harsh and used excessive discipline, Crystal Martodam better supported the children's developmental needs, and Crystal Martodam facilitated the children's relationship with Jason's father.

[¶20] The district court made thorough findings on the best-interest factors under N.D.C.C. § 14-09-06.2(1), concluding under the factors it was in the best interests of the children to grant primary residential responsibility to Crystal Martodam with Jason Martodam having reasonable parenting time, unless the parties agreed in writing to additional or amended time.

[¶21] We conclude the district court made sufficient findings supported by testimony in the record, and the record contains sufficient competent evidence supporting the court's decision on primary residential responsibility and parenting time. Moreover, Jason Martodam failed to establish the court abused its discretion with regard to its evidentiary rulings. *See Vandal*, 2014 ND 45, ¶ 26, 843 N.W.2d 313. We also hold the court did not abuse its discretion by not appointing a parenting investigator or by not ordering counseling. *See* N.D.C.C. § 14-09-06.3(1) ("[T]he court, upon the request of either party, or, upon its own motion, *may* order an investigation and report concerning parenting rights and responsibilities regarding the child." (emphasis added)); *Prchal v. Prchal*, 2011 ND 62, ¶ 27, 795 N.W.2d 693

5

("[D]ecision to appoint a parenting coordinator and to order counseling are committed to the district court's discretion.").

[¶22] Under our standard of review, we conclude the district court did not clearly err in its decision amending the judgment to grant primary residential responsibility for the minor children to Crystal Martodam with reasonable parenting time to Jason Martodam. We further conclude, however, that the court erred in making Jason Martodam's parenting time contingent on whether the minor children decide to go with him, essentially giving the children control over the exercise of his parenting time.

[¶23] In *Sisk v. Sisk*, 2006 ND 55, ¶ 11, 711 N.W.2d 203, this Court held the district court correctly struck language granting "reasonable and liberal visitation as agreed upon [b]etween the parties and the minor children," explaining:

> To include such language in the divorce decree was error. In *Barrett v. Barrett*, the Minnesota Court of Appeals dealt with a divorce decree containing similar language and stated that, while a child's choice when determining visitation, particularly when the child is of a certain age, should be given some consideration:
>
>> [T]his consideration does not permit a court to delegate to the children its role of determining an appropriate visitation schedule or the role of the custodial parent to make specific arrangements to comply with that schedule. Here, the trial court's order not only removes responsibility from those who should bear it but puts the children's welfare in jeopardy by demanding regular expression of their choices and their singular responsibility to determine what visits will occur. It is not in the children's best interest to become bargaining agents between their parents in working out arrangements for each visitation.
>
> *Barrett v. Barrett*, 394 N.W.2d 274, 279 (Minn. App. 1986).
>
>> "While there is nothing wrong with the children being heard regarding their wishes, our law proceeds on the assumption that they are nevertheless children and, thus, more interested in the desire of the moment than in considering the long range needs for the development of a healthy relationship with both parents where that is possible."

6

*In the Matter of the Marriage of Kimbrell*, 119 P.3d 684, 693 (Kan. App. 2005) (quoting *Ellis v. Ellis*, 840 So.2d 806, 813 (Miss. App. 2003)). The trial court, correctly, struck the language making the children a party to visitation deliberations in its February 4, 2005, interim order and its July 11, 2005, amended judgment.

[¶24] Here, in amending the judgment to grant Jason Martodam parenting time with the minor children, the district court also included the following two paragraphs:

> [Defendant Jason Martodam's] parenting time with CRM, born 2001, and KJM, born 2004, shall be the decision of CRM and KJM, individually. If either CRM and [sic] KJM does not wish to attend parenting time with the Defendant, they shall not be required to go. It is now on the Defendant to figure out how to rebuild his relationship with CRM and KJM so that they want to spend time with him.
> Likewise, when the minor children ACM, born 2007, and LSM, born 2008, reach the age of 14 years, they also shall have the right to decide whether or not they want to go with the Defendant for parenting time. Defendant needs to figure out how to build a relationship with the two younger children now so that they will want to spend time with him when they turn 14.

The district court also retained the holiday schedule set forth in the original judgment, but the court further stated:

> CRM and KJM shall have the right to decide whether or not they want to go to these holidays with the Defendant. When the minor children, ACM and LSM, reach the age of 14 years, they, likewise, shall have the option of whether or not they want to spend the holidays with the Defendant.

We conclude the district court erred by including these specific provisions limiting Jason Martodam's exercise of his parenting time. We therefore modify the district court's October 2018 amended judgment to strike this language.

[¶25] Jason Martodam also argues the district court erred in calculating his child support obligation by using his 2016 income of $28,000. The court, however, found his income had not changed since the interim order hearing or the filing of the financial affidavit on May 2, 2018. The court concluded its

7

prior child support calculation, incorporated in its June 2018 amended interim order and establishing a gross annual income of $28,800, remained valid. While Jason Martodam asserts that he was no longer working at the places listed on his financial affidavit because a feedlot contract had not been renewed and that his income averages about $18,000 annually at this point as a result of his having started his own business, his testimony at the August 2018 hearing was less than clear as to what his actual income was. He further seemed to suggest he voluntarily lost income to put time and effort into these court proceedings.

[¶26] We will not reverse a district court's finding where it has made "[a] choice between two permissible views of the evidence . . . based either on physical or documentary evidence, or inferences from other facts, *or on credibility determinations.*" *Lind v. Lind*, 2014 ND 70, ¶ 18, 844 N.W.2d 907 (citation omitted) (emphasis added). We conclude Jason Martodam failed to establish that the court's finding about his income is clearly erroneous. If a child support obligor's income declines, the obligor may file a motion with supporting evidence requesting a modification of the child support obligation.

[¶27] We affirm the district court's October 2018 amended judgment as modified.

## IV

[¶28] Jason Martodam argues the district court abused its discretion by denying his motions for contempt and to amend the amended judgment. He argues that issues relating to Crystal Martodam giving him his parenting time had been ongoing before this litigation and that the court erred in failing to consider the evidence and exhibits he submitted.

[¶29] "The district court has broad discretion in making contempt decisions." *Rath v. Rath*, 2017 ND 128, ¶ 9, 895 N.W.2d 306. "Technical violations of a court order, however, do not necessitate a contempt finding." *Id.* at ¶ 8.

> This is especially true in domestic relations cases, because granting contempt motions for every single possible technical violation of court orders would do nothing to further the best interests of children, but would simply increase the animosity

between the parties and discourage them from cooperating to resolve disputes by themselves. The contempt statutes are not intended to attempt to regulate and adjudicate every loss of temper, angry word, or quarrel between persons connected by a familial relationship.

*Id.* (quoting *Rath v. Rath*, 2013 ND 243, ¶ 11, 840 N.W.2d 656 (citations and quotation marks omitted)). This Court will disturb a district court's contempt determination only if the court abused its discretion. *Id.* at ¶ 9.

[¶30] In its March 2019 order denying Jason Martodam's motions for contempt and to amend the amended judgment, the district court made specific findings of fact and conclusions of law explaining its decision. The court concluded that a material change of circumstances had not occurred since the date of the October 2018 amended judgment and that Crystal Martodam was not in contempt for a denial of parenting time. The court explained its rationale for denying the motions. We conclude the court did not abuse its discretion.

V

[¶31] We have considered Jason Martodam's remaining issues and arguments and deem them either unnecessary to our opinion or without merit. The October 2018 amended judgment is affirmed as modified, and the subsequent order denying Jason Martodam's motions for contempt and to amend the amended judgment are affirmed.

[¶32] Jerod E. Tufte
Daniel J. Crothers
Lisa Fair McEvers
Gerald W. VandeWalle
Jon J. Jensen, C.J.